MULLINS v DURA CORPORATION

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—APPEAL AND ERROR.
   Review of a decision of the Workmen's Compensation Appeal Board is limited to questions of law and a search for evidence supporting the board's findings of fact.

2. WORKMEN'S COMPENSATION—SECOND INJURY—AGGRAVATION—OCCUPATIONAL DISEASE.
   Aggravation of a preexisting condition which results in a disability can constitute a personal injury in cases involving employees performing their ordinary employment who suffer injuries which are treated as an occupational disease where no specific incident caused the disability; however, a continuous disability following a specific on-the-job traumatic incident has never been treated as an occupational disease; therefore, the Workmen's Compensation Appeal Board did not err in ruling that the plaintiff's disability was traceable to a prior injury where the plaintiff had not been able to return to his prior occupation but had only been able to perform "favored" work with limited success until the pain increased and culminated in disability, and the insurance company which carried the insurance at the time of plaintiff's first injury was properly ordered to pay the compensation.

DISSENT BY O'HARA, J.

3. WORKMEN'S COMPENSATION—FINDINGS OF FACT—SECOND INJURY—APPEAL AND ERROR.
   *It was error as a matter of law for the Workmen's Compensation Appeal Board to find that a plaintiff's present disability was traceable to both a prior injury and work performed by the plaintiff for the defendant after the prior injury, and then to enter an order limiting compensation to that payable as a*

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 58 Am Jur 2d, Workmen's Compensation § 370 *et seq.*
[2] 58 Am Jur 2d, Workmen's Compensation § 278.

*result of the prior injury alone, and the case should be remanded to the Appeal Board with directions to enter an order awarding compensation on the basis of the new injury resulting from the work the plaintiff performed for the defendant company after the prior injury.*

Appeal from Workmen's Compensation Appeal Board. Submitted Division 1 January 9, 1973, at Detroit. (Docket Nos. 14010, 14011.) Decided March 28, 1973. Leave to appeal applied for.

Erwin G. Mullins presented his claim for workmen's compensation from Dura Corporation for a back injury suffered in 1966. Plaintiff had received benefits for a back injury suffered in 1964 at Dura Corporation from Liberty Mutual Insurance Company. A hearing referee found plaintiff suffered a personal injury in 1966 and ordered that Aetna Casualty & Surety Company, Dura Corporation's new insurer, pay compensation from that date. The Workmen's Compensation Appeal Board reversed, relieving Aetna Casualty & Surety Company of its responsibility for benefits, and ordered Liberty Mutual Insurance Company to pay compensation from and after 1966. Plaintiff and Liberty Mutual Insurance Company appeal. Affirmed.

*Goodman, Eden, Millender, Goodman & Bedrosian,* for plaintiff.

*Lacey & Jones* (by *Hayim I. Gross),* for defendants Dura Corporation and Aetna Casualty & Surety Company.

*LeVasseur, Warner, Mitseff & Brown,* for defendants Dura Corporation and Liberty Mutual Insurance Company.

Before: J. H. Gillis, P. J., and Bashara and O'Hara,* JJ.

J. H. Gillis, P. J. This is an appeal upon leave granted from a decision of the Workmen's Compensation Appeal Board. Plaintiff, Erwin Mullins, injured his back during the course of his employment with defendant Dura Corporation. It is not disputed that he is entitled to benefits; the only question is which of the two defendant insurance companies must pay the compensation.

Plaintiff originally injured his back in 1964. He received benefits from defendant Liberty Mutual Insurance Company, who, at that time, carried the insurance for Dura Corporation. Following an operation, plaintiff returned to work in 1965. Dura Corporation was then insured by defendant, Aetna Casualty & Surety Company.

Upon returning to work plaintiff was given jobs requiring less strain on his back, although he still complained of back pain. In 1966, after a series of job placements, the pain became so great that he quit and has not been able to work since.

A hearing referee found plaintiff suffered a personal injury arising out of and in the course of his employment on January 14, 1966, the date plaintiff quit his job, noting the injury to be an aggravation of the 1964 disability. It was ordered that Aetna Casualty & Surety Company pay workmen's compensation from and after that date.

The Workmen's Compensation Appeal Board reversed the referee's finding, and ruled:

"Plaintiff's present disability is clearly traceable back to the 1964 injury, and the work plaintiff performed for [Dura Corporation] after the 1964 injury, and the testi-

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

mony of the plaintiff and other witnesses, both lay and expert, falls short of meeting the burden of proof necessary to find an occupational disease injury as found by the referee."

Aetna Casualty & Surety Company was relieved of its responsibility for benefits; Liberty Mutual Insurance Company was ordered to pay compensation from and after January 14, 1966. Both plaintiff and Liberty Mutual Insurance Company appeal.

Review of a decision of the Workmen's Compensation Appeal Board is limited to questions of law and a search for evidence supporting the board's findings of fact. *Couch v Saginaw Malleable Iron Plant, Central Foundry Division of General Motors Corp,* 42 Mich App 223 (1972); *Carter v Kelsey-Hayes Co,* 386 Mich 610 (1972); MCLA 418.861; MSA 17.237(861).

The issue of which of two successive insurers is liable for compensation benefits in situations such as this is discussed in 3 Larson, Workmen's Compensation Law, § 95.12, pp 508.130–508.133:

"The Massachusetts-Michigan rule in successive-injury cases is to place full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.

"*If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second.* In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of his crutches which his first injury requires him to use. *This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms*

*indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.*

"On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a preexisting condition." (Emphasis supplied.)

In the instant case the appeal board could reasonably find that after plaintiff returned to work in 1965 and until his disablement in 1966, he had continuing symptoms of pain stemming from his 1964 injury even though he was not performing heavy labor as before. That pain increased and culminated in disability.

The facts can be distinguished from *Brinkert v Kalamazoo Vegetable Parchment Co,* 297 Mich 611 (1941), where an independent intervening force caused a second disabling injury.

We are not unmindful of the line of cases indicating that aggravation of a preexisting condition which results in a disability can constitute a personal injury itself. See, *e.g., Underwood v National Motor Castings Division, Campbell, Wyant & Cannon Foundry Co,* 329 Mich 273 (1951); *Fields v G M Brass & Aluminum Foundry Co,* 332 Mich 113 (1952); *Sheppard v Michigan National Bank,* 348 Mich 577, 585 (1957). However, those cases involved employees performing their ordinary employment who suffered injuries which were treated as an occupational disease where no specific incident caused the disability. We have not found a Michigan case, nor are we cited to one, where a *continuous* disability following a specific on-the-job

traumatic incident has been treated as an occupational disease.[1]

Here, a finding that, since the 1964 injury, plaintiff has never been able to return to his prior occupation but has only been able to perform "favored" work with limited success, is not unwarranted by the record. We affirm the decision of the Workmen's Compensation Appeal Board.

Affirmed. No costs.

BASHARA, J., concurred.

O'HARA, J. *(dissenting).* I think it should be mentioned that this is an appeal and cross-appeal from a split decision of the Workmen's Compensation Appeal Board.

Initially it involved which of two compensation insurers would be liable for payments to an injured employee of Dura Corporation. More importantly to plaintiff-appellant[1] it involves the extent of compensation benefits he will receive. If his present disability, which is not questioned, was found as a fact by the majority to have resulted from his original injury in 1964 or the natural worsening thereof, his entitlement is limited to the 500 weeks provided for in the act. Per contra if the services he performed after his return to production work resulted in a new injury and his admitted disability is consequential thereof, his entitlement continues so long as the disability persists.

The holding here is of no precedential value to the profession or the trial bench. The legal principle that the appeal board's findings of fact sup-

[1] This case can also be distinguished from *Regis v Lansing Drop Forge Co,* 25 Mich App 637 (1970), where a *second* injury led to a second claim of disability.

[1] It should be noted that plaintiff-appellant suffered the amputation of his other leg in a totally unrelated accident.

ported by competent testimony are sacrosanct and
beyond judicial review absent fraud is so well
settled that any citation to the point is superflu-
ous.

Thus, the question becomes whether or not the
majority opinion reflects an error of law.

The majority opinion of the appeal board as
relevant here holds:

"Plaintiff's present disability is clearly traceable back
to the 1964 injury, and the work plaintiff performed for
the defendant after the 1964 injury, and the testimony
of the plaintiff and other witnesses, both lay and expert,
falls short of meeting the burden of proof necessary to
find an occupational disease injury as found by the
Referee."

I now quote from the *order* which was entered
pursuant to the above finding of fact.

"This cause having come before the Appeal Board on
appeal by defendant, Aetna Casualty and Surety Com-
pany, for the decision, mailed April 24, 1967, of Hearing
Referee Huber, granting compensation benefits to plain-
tiff; after due consideration of the evidence taken and
the briefs of counsel (the Board having made a finding
of facts and law), and it appearing to the undersigned
members of the Board that the Decision made as afore-
said should be reversed, Now, Therefore;

"IT IS ORDERED, That the decision of the Hearing
Referee in this cause shall be and it hereby is reversed
as to the defendant's carrier, Aetna Casualty and
Surety, Company, and its insurer, Liberty Mutual In-
surance Company, is ordered to continue its payments
as provided in the Workmen's Compensation Act be-
yond January 14, 1966, and until further order of the
Bureau."

The finding of fact and the order issued are
totally irreconcilable. Obviously the majority can-
not find that "Plaintiff's present disability is

clearly traceable back to the 1964 injury, *and the work plaintiff performed for the defendant after the 1964 injury,* * * * "[2] (emphasis supplied) and then enter an order limiting compensation to that payable as a result of the 1964 injury alone, thus reversing the referee. By its terms the majority finding of fact is identical with that of the minority which affirmed the referee as to this issue. I quote from the minority:

"*I would affirm the Referee's finding of new injury.* I would also concur that loss of leg was not shown. While plaintiff had debilitating back pain, he uses his leg regularly, although admittedly he cannot stand over half hour periods without sciatica, and his walking is similarly restricted. But within those limits he has individual use that compels further affirmance of the Referee." (Emphasis supplied.)

For the error of the application of law to the finding of fact by the majority, I would reverse and remand to the board with directions to enter an order awarding plaintiff compensation on the basis of the new injury resulting from the work plaintiff performed for the defendant "after the 1964 injury".[3]

---

[2] It is to be noted carefully that the phrase "and the work plaintiff performed for the defendant after the 1964 injury" is set off in its entirety by commas both at the beginning and end of the phrase.

[3] I am well aware of the vigorous arguments of both counsel addressed to what the appeal board majority meant by what is said in the finding of fact. I deem it unwise to speculate on what the majority may have meant and confine myself to review of what it did say.