SANDERS v GENERAL MOTORS CORPORATION

Docket No. 68064. Submitted March 9, 1984, at Lansing.—Decided September 17, 1984.

Evelyn M. Sanders, an employee of General Motors Corporation, injured her knee while at work in 1955. Between 1955 and 1960 she experienced repeated problems with the knee and missed a considerable amount of work due to those problems. She received workers' compensation benefits for the time she missed from work due to her knee problems. In 1960, she underwent surgery on the knee and experienced swelling, pain, and infection in the knee for the next three or four years. She never returned to work after the surgery and was paid workers' compensation benefits for the statutory period of 500 weeks from 1955 through 1966. She filed a petition for benefits in 1977 alleging that the operation in 1960 and the resulting problems constituted a new injury entitling her to 500 weeks of benefits beginning at the date of the operation and extending until approximately 1970. A hearing referee found that Sanders was not entitled to a new date of injury. The Workers' Compensation Appeal Board affirmed. Sanders appeals by leave granted. *Held:*

Although there are two injuries or disabling events in this case, the date of injury for purposes of determining the rate and duration of payment is 1955 because the 1955 injury is the only injury that arose directly out of and occurred during the course of Sanders's employment. The last day of work is not an appropriate date of injury because Sanders was not subject to the conditions resulting in her injury on that date.

Affirmed.

WORKERS' COMPENSATION — DATE OF INJURY — MEDICAL TREATMENT — SUBSEQUENT DISABILITY.

The total disability of an employee resulting from medical treatment undertaken in an effort to alleviate a continuing partial disability arising out of and in the course of employment does not constitute a new injury entitling the employee to a new

REFERENCE FOR POINTS IN HEADNOTE
82 Am Jur 2d, Workmen's Compensation § 337.

date of injury for purposes of the Worker's Disability Compensation Act; in such a case, the date of the original injury resulting in partial disability is the correct date to be used in fixing the rate and duration of workers' compensation benefits (MCL 418.301[1]; MSA 17.237[301][1]).

*Rosenberg & Vigiletti, P.C.* (by *Susan A. McCrandall*), for plaintiff.

*Munroe & Nobach, P.C.* (by *Cameron C. McComb*), for defendant.

Before: CYNAR, P.J., and R. B. BURNS and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. Defendant, General Motors Corporation, appeals by leave granted a decision of the Workers' Compensation Appeal Board. The facts are not in dispute.

On October 24, 1955, plaintiff, Evelyn M. Sanders, injured her knee when she was struck by a frame at work. Dr. Franklin Wade diagnosed plaintiff as having a dislocated kneecap and performed a "closed reduction" at McLaren Hospital. Plaintiff returned to work but had a problem with repeated dislocation of the left kneecap. She was paid workers' compensation benefits for the considerable time she missed from work between 1955 and 1960. Dr. Wade determined that plaintiff would benefit from a tibial tubercle transplant, known as the Hauser operation. This operation was performed on July 29, 1960. Plaintiff did well at first but thereafter developed severe fever, extreme pain and marked swelling. Dr. Wade testified that plaintiff developed severe hematoma (swelling filled with blood) and virulent, secondary infection. Plaintiff remained in the hospital until October, 1960.

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff was readmitted to the hospital in 1961 because of recurring swelling, pain and infection. Plaintiff's condition did not clear up until sometime in 1963 or 1964. At that time, she was taken off all antibiotics and medication and was able to walk without external support.

Plaintiff never returned to work at General Motors after the operation, and was paid workers' compensation benefits for the statutory period of 500 weeks from 1955 through 1966.

Plaintiff filed a petition for benefits on October 12, 1977. The petition was amended February 10, 1978. A hearing was held before a hearing referee on February 23, 1979. At that hearing, the parties agreed to the facts and plaintiff's counsel stated plaintiff's position as follows:

"[I]t is our allegation that the operation in 1960 and the resulting [sic] constitutes a new injury.

"This new injury would be the 1960 date of injury and would entitle her to five hundred weeks of compensation beginning as of the time of the operation extending to approximately 1970 which means that—and also paid at the 1960 rate—this would mean, it is our contention, that from 1960 to 1966 Mrs. Sanders should have been paid at the 1960 rate and then continuing until approximately in 1970, the full five hundred weeks."

On March 19, 1979, the hearing referee found that plaintiff was not entitled to a new date of injury. Appeal was taken to the Workers' Compensation Appeal Board and, in a split decision dated October 22, 1982, the decision of the hearing referee was affirmed. The majority opinion stated:

"Larson specifically finds the *original* injury date to be the basis of that plaintiff's future entitlement (*Mullins v Dura Corp*, 46 Mich App 52, 55; 207 NW2d 404 [1973]).

"Additionally, *Bullard v Mult-A-Frame,* 33 Mich App 678 (1971) describes that plaintiff's attempt to have further consequences characterized as a new injury to be an 'unnatural meaning', adding:

" 'The injuries to plaintiffs were inflicted when they were on their jobs and not when they were receiving subsequent medical care.' *(Bullard,* pp 683-684.)

"So too here, plaintiff was injured in fact on one occasion, in 1955, with her 1960 surgery and resulting disability compensable—but based solely on the single injury. The decision is affirmed."

One member of the board dissented, believing that the appropriate date of injury should be no earlier than plaintiff's last day worked.

The issue before us is whether surgical intervention to resolve a continuing partial disability which results instead in leaving a plaintiff totally disabled constitutes a new injury arising out of and in the course of employment.

There is no question that defendant is liable for benefits. *Oleszek v Ford Motor Co,* 217 Mich 318; 186 NW 719 (1922). The question relates to the date of injury that is to be applied. 1 Larson, Workmen's Compensation Law, § 13.11, p 3-365, states that consequential injuries of this nature do not, in a strict sense, arise out of the course of employment.

"[I]t becomes necessary to contrive a new concept, which we may for convenience call 'quasi-course of employment.' By this expression is meant activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury." Larson, *supra.*

Larson speaks in terms of a "chain of causation" to relate the subsequent quasi-course-of-employment injury back to the compensable injury that occurred in the course of employment. In Larson's view, surgical complications that may develop, as in this case, do not break the chain of causation.

"It is only when we come to cases involving the conduct of the claimant himself that the possibility of a break in the chain of compensable consequences is encountered. Under the analysis suggested in § 13.11, conduct of the employee related to the treatment of a compensable injury would clearly be in the quasi-course-of-employment category and, therefore, in line with the reasoning there put forward, should not break the chain of causation unless it amounted to an intentional violation of an express or implied prohibition." 1 Larson, Workmen's Compensation Law, § 13.21, pp 3-392—3-393.

Although no Michigan case is directly on point, analogies can be drawn to cases involving successive insurers and cases involving plaintiffs seeking a later date of injury when the Worker's Disability Compensation Act is amended. *Thick v LaPeer Metal Products Co,* 103 Mich App 491; 302 NW2d 902 (1981), dealt with a conflict between the defendant's successive insurers. The plaintiff was injured in the course of her employment on April 17, 1969. Transamerica was the defendant's insurance carrier on that date. The plaintiff underwent back surgery and returned to favored work until December 7, 1973, when she suffered a sharp pain in her back where the surgery had been performed. The later injury was also work-related. Great American Insurance was the carrier on the later date of injury. This Court stated:

"If a new injury or aggravation of the original injury

in fact occurred, then liability would fall on Great American and not on Transamerica. *Kubicsek v General Motors Corp,* 57 Mich App 517; 226 NW2d 546 (1975). Conversely, if petitioner's disability resulted from the April, 1969, injury, even though her condition progressively deteriorated, Transamerica alone would be liable for compensation benefits. *Mullins v Dura Corp,* 46 Mich App 52; 207 NW2d 404 (1973)." 103 Mich App 496.

In *Thick,* Transamerica would be liable because the disability was traceable to the work-related date of injury when it was at risk, even though it was not the carrier when plaintiff became disabled due to that injury.

In *Bullard v Mult-A-Frame Co,* 33 Mich App 678; 190 NW2d 559 (1971), relied on by defendant, the four plaintiffs were all injured in the course of their employment before September 1, 1965. On September 1, 1965, the workers' compensation amendatory act of 1965 became effective. This act, among other things, increased the level of benefits paid to qualified injured workers. After September 1, 1965, the plaintiffs all sustained personal losses (*i.e.,* amputations and loss of vision) as a direct result of the work-related injuries. Plaintiffs argued that they were entitled to the benefits under the new act. This Court ruled:

"All of the personal injuries suffered by plaintiffs antedate September 1, 1965. Plaintiffs contend, however, that their 'personal losses', occurring after the effective date, were 'personal injuries' within the meaning of the amendatory act. Although we highly sympathize with plaintiffs' tragic losses, we are constrained to hold otherwise. Plaintiffs' post-effective-date physical losses were not 'personal injuries'; they were instead the directly-related and unfortunate consequences of their pre-effective-date injuries.

"We cannot assign to the phrase 'personal injury' the

unnatural meaning plaintiffs urge us to give it. It is the Court's duty to construe legislation as it reads, without resorting to contorted definitions in the name of equitable considerations. *Shaw v Lakeway Chemicals, Inc,* 3 Mich App 257 (1966).

"The injuries to plaintiffs were inflicted when they were on their jobs and not when they were receiving subsequent medical care." (Footnote omitted.) 33 Mich App 683.

While *Bullard* dealt with an interpretation of the statute in effect at that time, the analysis there is instructive.

In this case there are two injuries or disabling events, one in 1955 at work resulting in partial disability and another in 1960 at the hospital resulting in total disability. However, the 1955 injury is the only injury that arose directly out of and occurred during the course of plaintiff's employment. As in *Bullard, supra,* the 1960 injury was "the directly-related and unfortunate consequence" of the 1955 work-related injury. Although the disability caused by the 1960 injury is compensable under the act and in accordance with Larson's theory of "quasi-course-of-employment", the pivotal date of injury for purposes of determining the rate and duration of payment is 1955. *Thick v LaPeer Metal Products, supra; Bullard Mult-A-Frame Co, supra.*

The statute relating to "date of injury" in effect at all relevant times herein read:

"The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in the case of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death." MCL 412.1; MSA 17.151.

The provision currently in effect is substantially the same. MCL 418.301(1); MSA 17.237(301)(1). Plaintiff's disability is not due to a disease related to work and is due to a single work-related event. The last day of work was not an appropriate date of injury because plaintiff was not subject to the conditions resulting in her injury on that date. Plaintiff was injured when she was struck by a frame at work on October 24, 1955, and all of her subsequent problems are traceable to that event.

The purpose of the workers' compensation act is to recompense employees for disabling injuries received in the course of their employment. It was not intended to protect them from disabling injuries received while undergoing surgery in a hospital. If a hospital visit resulting in an injury was caused by a work-related prior injury, then plaintiff is entitled to benefits because of the "traceable" relationship between the hospital visit and the employment setting and for no other reason. Compare *Griggs v Budd Co,* 90 Mich App 649, 652-653; 282 NW2d 431 (1979); *Crawley v General Motors Truck Corp,* 259 Mich 503, 505; 244 NW 143 (1932); *Osment v Charnley,* 65 Mich App 155; 237 NW2d 226 (1975); *Bullard v Mult-A-Frame Co, supra.* Under the workers' compensation act, therefore, the work-related date of injury should govern.

The decision of the Workers' Compensation Appeal Board is affirmed. Costs to appellee.