## HUDSON v JACKSON PLATING COMPANY

Docket No. 88674. Submitted October 21, 1986, at Lansing. Decided July 6, 1987. Leave to appeal applied for.

Sam W. Hudson worked for several different employers in the plating and buffing industry over a twenty-year period. In 1972, he filed for workers' compensation benefits alleging that he had developed emphysema from his employment. His claim was redeemed for $15,000. He subsequently went to work for yet another employer, Jackson Plating Company, doing the same kind of work he had done before. After six weeks, his emphysema flared up and he was again forced to quit work. He filed another claim for workers' compensation benefits. The claim was denied, a hearing referee finding that Hudson's disability was not the result of his employment with Jackson. Hudson appealed and the Workers' Compensation Appeal Board reversed, finding Jackson liable for payment of the total amount of compensation due Hudson. Jackson appealed to the Court of Appeals, which affirmed the finding of liability against Jackson but remanded the matter for resolution of the issue of whether Jackson was entitled to receive apportionment from Hudson's prior employers, 105 Mich App 572 (1981). On remand, the WCAB held that Jackson was not entitled to apportionment benefits from S & S Polishing Company, one of Hudson's earlier employers. Jackson appealed.

The Court of Appeals *held:*

1. The amount of the award owed by Jackson must be reduced by the amount Jackson would have been entitled to recover by way of apportionment had there been no redemption agreement among the prior employers. Furthermore, Jackson's liability should be limited to its pro rata share in order to effectuate both the policy against double recovery and the purpose behind the applicable statutory apportionment provisions. Under those provisions, Jackson would have been enti-

REFERENCES

Am Jur 2d, Workmen's Compensation, §§ 333-334, 407-409, 429-432, 469.

See the annotations in the Index to Annotations under Worker's Compensation.

tled to apportionment from only those parties with whom plaintiff was employed for at least six months in the ten-year period prior to his last day of work with Jackson. Hudson was employed by Jackson only 5.88 percent of the time of his total employment during the preceding ten-year period. Thus, Jackson is liable for 5.88 percent of the amount of the full benefits which Hudson had previously been awarded.

2. The matter is remanded to the WCAB for reentry of a judgment against Jackson in the amount of 5.88 percent of the amount of the full benefits which Hudson had previously been awarded.

Remanded.

SHEPHERD, J., dissented. He would hold that the total amount of benefits that should be paid to Hudson by Jackson should be reduced by the $15,000 which Hudson has already received under the redemption agreement. Since Jackson would have to pay $15,000 less, there would be a reduction in the amount of apportionment by that same amount and the former employers would have less to pay in apportionment. This solution would give Hudson one hundred percent of his benefits, minus the $15,000 he already received, would apportion Jackson's liability, and would reduce the amounts of apportionment of the former employers. Judge SHEPHERD would remand to the WCAB for recomputation of benefits in a manner consistent with his solution.

WORKERS' COMPENSATION — OCCUPATIONAL DISEASES — APPORTIONMENT — REDEMPTION AGREEMENTS.

An agreement between an individual and his prior employers whereby the individual's workers' compensation claims based upon occupational disease are redeemed does not bar another, subsequent employer from seeking apportionment from the prior employers where the individual again becomes eligible for workers' compensation benefits because of the occupational disease; furthermore, the amount of the award against the subsequent employer should be reduced by the amount that employer would have been entitled to recover by way of apportionment but for the redemption agreement (MCL 418.435; MSA 17.237[435] prior to amendment by 1980 PA 357).

*Willard F. Rappleye,* and *Richard J. Dimanin* (of Counsel), for plaintiff.

*LeVasseur, Egan, Leslie & Johnson, P.C.* (by *Denice M. LeVasseur*), for S & S Polishing Com-

pany and Bituminous Casualty Insurance Company.

*Stanton, Bullen, Nelson, Moilanen & Klaasen, P.C.* (by *Terry J. Klaasen*), for Jackson Plating Company and Continental Insurance Company.

Before: SULLIVAN, P.J., and SHEPHERD and R. M. SHUSTER,* JJ.

PER CURIAM. This appeal represents the second time this matter has been brought to this Court. Currently, defendant Jackson Plating Company and its insurer, defendant Transportation Insurance Company, appeal by leave granted from an order of the Workers' Compensation Appeal Board finding them liable to plaintiff Sam Hudson for benefits ordered by the referee with no right of apportionment from defendant S & S Polishing Company and its insurance carrier, Bituminous Casualty Insurance Company.

In 1972, plaintiff, who had contracted emphysema due to his employment in the plating and buffing industry with ten different firms over a twenty-year period, redeemed his workers' compensation claims from his various employers for $15,000. Plaintiff subsequently returned to work in 1975 for defendant Jackson, with which he had never been previously employed. Plaintiff performed the same work for Jackson as he had performed for his previous employers (polishing and buffing metals) and was forced to quit after six weeks after redeveloping emphysema. Plaintiff filed a claim for workers' compensation benefits against Jackson in July of 1975. The claim was initially brought to this Court on appeal from the WCAB's finding of liability against Jackson. This

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Court affirmed the finding of liability, but remanded the matter to the WCAB for resolution of the issue whether Jackson was entitled to receive apportionment from plaintiff's prior employers under the former provisions of § 435 of the Workers' Disability Compensation Act, MCL 418.435; MSA 17.237(435). 105 Mich App 572; 307 NW2d 96 (1981), lv den 412 Mich 936 (1982).

Following an evidentiary hearing on the remanded issue before the referee, the WCAB reversed the decision of the referee in favor of Jackson and held that Jackson was not entitled to apportionment benefits from S & S.[1]

The sole issue now on appeal is whether the prior redemption agreement shielded defendant S & S from apportionment liability to Jackson. It is undisputed that, in the absence of the redemption agreement, Jackson would have had a right of apportionment against S & S pursuant to those dictates of § 435 which existed prior to the statute's 1981 amendment.[2] Unfortunately, there is no authority to be found which addresses the question whether a redemption agreement between a claimant and his then prior employers bars a subsequent employer, who was not a party to the agreement, from seeking apportionment from a prior employer.

*Johnson v Valley Grey Iron Foundry,* 58 Mich

---

[1] After a delay in the decision of the referee, this Court entered an order directing the WCAB to decide the matter within twenty-eight days. The order also terminated the continuing jurisdiction of this Court, thereby ultimately requiring Jackson to apply for leave to appeal the WCAB's decision.

[2] MCL 418.435; MSA 17.237(435) was amended as of January 1, 1981, to eliminate references to apportionment of liability among the claimant's last and prior employers. This Court, however, in *Forsythe v Valley Consolidated Industries,* 139 Mich App 211; 361 NW2d 768 (1984), lv den 422 Mich 944 (1985), held that the Legislature intended the amendment to have only prospective application. It is undisputed that the preamendment apportionment provisions of § 435 are applicable to the instant case.

App 574; 228 NW2d 469, lv den 394 Mich 769 (1975), cited by the parties, bears important factual distinctions. The plaintiff in *Johnson* was last employed by defendant Saginaw and had been previously employed with defendant Valley. After developing an employment-related lung disease, as well as sustaining a groin injury while working for Saginaw, the plaintiff filed a claim for workers' compensation benefits against both Saginaw and Valley. Thereafter, Saginaw and the plaintiff entered into a redemption agreement, absolving Saginaw from liability for all claims which the plaintiff possessed against it. The plaintiff then obtained an award against Valley arising from his lung disease, and Valley sought apportionment from Saginaw. This Court found that, since the plaintiff could not file a claim against Saginaw for his lung disease because Saginaw was not his last employer under § 435 as it then provided, the redemption agreement operated to absolve Saginaw only from liability arising out of the plaintiff's groin injury claim. Moreover, we found that the redemption agreement did not affect Valley's liability to the plaintiff for the lung disease claim nor Valley's right to contribution from Saginaw, as Valley was not a party to the agreement. 58 Mich App 582.

Here, plaintiff entered into a redemption agreement with his then last employer, S & S Industries, Inc., and certain prior employers who would be subject to apportionment liability to S & S Industries for plaintiff's occupational disease claim. In contrast to the agreement in *Johnson,* the instant agreement shielded the defendant employers from all potential liability under the Workers' Disability Compensation Act. The agreement specifically provided:

Defendants agree to pay $15,000.00 in redemp-

tion of all liability under the Michigan Workmen's
Compensation Act, including medical, surgical and
hospital expenses, past, present or future.

This language evidences an intent by the parties
to effectively redeem both the employers' direct
liability to plaintiff and any derivative liability
which could arise through apportionment to plain-
tiff's then last employer, S & S Industries, which
was a party to the agreement.

However, subsequent to the execution of the
agreement, plaintiff returned to the industry in
1975 and became employed for the first time by
defendant Jackson before his emphysema redevel-
oped, thereby entitling plaintiff to collect addi-
tional benefits against Jackson. Unlike the facts in
*Johnson,* Jackson faces a challenge against its
claim for apportionment because of a redemption
agreement which was intended to insulate the
prior employers from all future liability arising
from plaintiff's emphysema.

Nonetheless, relying on *Johnson,* we could con-
clude that the redemption agreement should have
no effect on Jackson's claim for apportionment
because Jackson was not yet involved and was not
a party to that agreement. Such a result, however,
would lead to the inevitable result that plaintiff
would obtain a windfall. Although plaintiff is enti-
tled to receive the entire amount of his award
from Jackson, he would nonetheless indirectly
receive a substantial share of the award from his
prior employers, via their pro rata payments of
contribution to Jackson. Such a result would effec-
tively nullify the provision of the redemption
agreement absolving the prior employers from all
future derivative liability under the act to the
benefit of plaintiff.

Nor do we suggest that Jackson should be liable
for the entire award. Jackson should not be put in

this position merely because it was not possible for it to participate in the redemption agreement. Moreover, imposition of such liability on Jackson would undermine the purpose behind the former apportionment provisions of § 435, "to distribute equitably the liability for a disease caused by similar employment conditions among the employers who [are] responsible for those conditions." *Derwinski v Eureka Tire Co,* 407 Mich 469, 488; 286 NW2d 672 (1979).

We conclude that the only equitable solution is to reduce the amount of the award (owed by Jackson) by the amount Jackson would have been entitled to recover by way of apportionment but for the redemption agreement. The WCAB wrongfully concluded that it had no authority to grant such a remedy. Jackson is entitled to a reduction of this type where neither the apportionment statute nor the redemption provisions of the act[3] provide for or forbid crediting under these circumstances and where the remedy is necessary to prevent plaintiff from obtaining a double recovery not contemplated by the act. See *Thick v Lapeer Metal Products,* 419 Mich 342, 350-351; 353 NW2d 464 (1984).

Plaintiff has already received $15,000 from his prior employers pursuant to the redemption agreement, which intended to redeem the employers' total liability for the occupational disease from which plaintiff again suffers and from which he now seeks recovery against Jackson. Although plaintiff is entitled to recover additional benefits against Jackson, Jackson's liability should be limited to its pro rata share in order to effectuate both the policy against double recovery, *Thick, supra,* and the purpose behind the former apportionment provisions of § 435, *Derwinski, supra.*

___

[3] MCL 418.835; MSA 17.237(835).

Applying the former provisions of § 435, Jackson would have been entitled to apportionment from only those parties with which plaintiff was employed for at least six months in the ten-year period prior to his last day of work with Jackson. At the evidentiary hearing before the referee, the parties stipulated that plaintiff was employed with Jackson for two months and that, during the relevant ten-year period, he was employed for Leslie Polishing for twenty-four months and for S & S for eight months. It was further stipulated that during the ten-year period no other employer in the industry employed plaintiff for at least six months at a time.

Pursuant to the terms of the stipulation, the calculation of apportionment would have been as follows:

Total Period of Employment — 34 months
Leslie Polishing & Buffing    — 24/34 = 70.59 percent
S&S Polishing Company         —  8/34 = 23.53 percent
Jackson Plating Company       —  2/34  = 5.88 percent

We consequently remand this matter to the Workers' Compensation Appeal Board for reentry of a judgment against Jackson in the amount of 5.88 percent of the amount of the full benefits which plaintiff had previously been awarded.

Reversed and remanded.

SHEPHERD, J. *(dissenting)*. I dissent for the reason that I do not believe that the solution arrived at by my colleagues satisfies the objective of the workers' compensation scheme in Michigan, which is to compensate workers who have been injured during the course of their employment. I agree that *Thick v Lapeer Metal Products,* 419 Mich 342; 353 NW2d 464 (1984), requires that courts attempt

to avoid a double recovery and that an attempt should be made at apportioning liability on an equitable basis. I reluctantly conclude that the formula accepted by my colleagues deprives the worker of a "single recovery" and does not apportion liability on an equitable basis. I concede that any formula that is applied to the difficult fact situation presented in this case will result in some degree of unfairness, but on balance I would adopt another formula that would more closely approximate the objectives of the workers' compensation statutes.

We must first recognize that the apportionment scheme that is involved in this case was designed to take into account the fact that the industry in question, rather than employment with a specific employer, causes the disease. Employees may shift from one employer to another in the same industry and it is the accumulation of exposure to the dangers of the industry that results in the employee's disability. For that reason two methods of fairly spreading the risk among employers have been legislatively determined.

Under the former law cited in the majority opinion the last employer of an employee who became disabled in the industry could obtain contribution from former employers, and it is in this manner that the risk of harm was spread with regard to an injury that was created by the industry rather than by a specific employer. Under the former statutory scheme, no single employer would bear the risk of simply being the last employer by happenstance.

Under the new law it is the risk of being the last employer that is spread equally since, when all employers and employees are considered together, every employer has an equal risk of being the last employer. The fact that one employer

becomes responsible in a given case means that another employer will become responsible in another case and no single employer will be responsible for any apportionment. What is involved is simply a choice of determining how the risk within the industry should be spread among all employers.

It is not for us to say which method of spreading the risk is best. That is not our concern since the Legislature decided to spread the risk in a new way when it adopted the new statute, thereby rejecting the former method of spreading the risk as a matter of legislative policy. That is a legislative function and the courts ought not to interfere.

Under either system of spreading the risk among employers, the employee always receives one hundred percent of the benefits and the only issue as between employers relates to how the risk is spread. It is my perception that the method of spreading the risk has nothing to do with whether the employee should or should not receive one hundred percent of the benefits.

Under the majority opinion the Court is saying that the employee ought not to receive one hundred percent of the benefits and in fact the risk is spread by placing approximately ninety-five percent of the burden on the employee. Under any interpretation of the statute, I believe that the employee always has the right to attempt to return to work in the same industry if his or her health permits and, if the illness strikes the employee again, the employee is again entitled to obtain full benefits.

The problem in this case arises for two reasons. First, the employee entered into a redemption agreement with the former employers for $15,000 which purported to cover all future claims. Secondly, the employee then successfully attempted to

get back into the industry and was hired by another employer which did not participate in the earlier redemption agreement. I believe that when the employee and the former employers entered into the earlier redemption agreement they were subject to the then existing law which permitted an employee to reenter the industry and which required former employers to contribute to the last employer. I also believe that when the last employer agreed to hire the plaintiff, that employer had rights of apportionment in the event that the employee were to suffer a recurrence of symptoms and those rights of apportionment could not be extinguished by a contract to which the last employer was not a party.

As I view the statute I do not believe that the Legislature intended that when the employee and the former employers entered into a redemption agreement they could effectively and permanently bar the employee from attempting to return to work in an industry where he had spent a large proportion of his working life. When the employers attempted to redeem their liability as to all future liability it could only mean that they were redeeming any future liability that they had *to the employee.* They as well as the employee had to have been aware that the employee could seek employment again in the industry and that a future employer would have a right to apportionment.

If the analysis were to stop at this point the employee would be able to receive one hundred percent of the benefits and the last employer would be able to receive full rights of contribution from all of the former employers and that, to me, under the circumstances would also be inequitable. The employee worked for the last employer for only two months and as a result would have the

right to collect benefits far into the future. If this were to occur without any adjustments, the employee might very well receive a double recovery or at least more than the amount to which he would have been entitled had he not entered into the redemption agreement. In this case my concerns are somewhat mitigated by the fact that this Court has received a formal notification of death from the attorneys for plaintiff indicating that plaintiff died on March 22, 1987.

In attempting to fashion an equitable remedy I cannot ignore the fact that plaintiff entered into a redemption agreement that purported to settle all future claims. By returning to the same industry and obtaining the right to obtain full workers' compensation benefits after working only two months, it is my view that it would be inequitable to permit the plaintiff to retain the benefit of the redemption agreement while at the same time receiving one hundred percent of all future benefits for himself or for his dependents subsequent to his death. I therefore conclude that the total amount of benefits that should be paid to the plaintiff by the last employer must be reduced by the $15,000 which the plaintiff has already received under the redemption agreement. Since the last employer will have to pay $15,000 less there will be a reduction in the amount of apportionment by that same amount and the former employers will have less to pay in apportionment. In this way the former employers will be partially compensated for having paid $15,000 under the redemption agreement. To the extent that they remain disappointed by having to pay apportionment at all, their disappointment is vitiated by the fact that when they entered into the redemption agreement they must have known that the employee had the right to go back into the industry

to work for another employer who under the then existing law had rights of apportionment that could not be extinguished by an agreement to which the last employer was not a party.

By adopting the formula that I propose in this dissent I believe that the following objectives are achieved:

a. The employee and his dependents receive one hundred percent of their benefits minus the $15,-000 they have already received;

b. The last employer receives apportionment as required by law;

c. The former employers will have to pay apportionment but such apportionment will be reduced by the amount they previously paid to the employee.

It appears to me that there are only two solutions permitted by law: either that provided by the former statute, which allows apportionment or that provided by the new statute, which does not. I regret that the formula chosen by the majority opinion adopts a method of sharing the burden which does not find support in any statute. Nothing in the law forces the employee to forfeit a substantial portion of his benefits as a result of making a successful attempt to reenter the work force.

I recognize that my formula also contains a measure of inaccuracy. By urging a deduction of the full $15,000 I have not taken into account the fact that part of the redemption included compensation for periods of unemployment up to the time plaintiff became reemployed. However, to attempt to determine which portion of the $15,000 was designed to apply to future benefits would put any formula into the upper reaches of pure speculation. Perhaps in another case such an exercise would be possible; here it is not.

I would remand to the WCAB for recomputation of benefits in a manner consistent with this opinion.